Milligan, J.,
delivered the opinion of the Court.
This was an action commenced in the Circuit Court of Davidson County, on the 4th of May, 1864, by the plaintiff, Gibson Merritt, alone. At the September Term, 1865, the writ and declaration was, upon motion, amended by making A. G. Merritt, E. Hagan and Wife, parties plaintiff. At the January Term, 1866, there is another entry, showing that these new parties, and the Building and Loan Association, were added as plaintiffs, by consent. At the September Term, 1866, the cause was submitted to a jury, which resulted in a mistrial. After this, at the January Term, 1867, the defendants *97 moved the Court to transfer the cause to the Circuit Court of the United States; which motion was refused; and at the September Term, 1867, the cause was again submitted to a jury, and a verdict rendered in favor of the defendant; and upon a motion for a new trial being overruled, an appeal in error, was prosecuted to this Court.
It is proper to remark, that the declaration contains four counts. The first is in trespass, for entering upon the lands of the plaintiffs, cutting and carrying off a large amount of timber; the second ’ is in trover, for converting 1,200 cords of wood; the third is in debt, for money received on the sale of wood; and the fourth is for the price of wood sold by the plaintiff to the defendant. The defendant pleaded, not guilty, nil dehit, non-assumpsit, and the statute of two years, prescribed by the Acts of Congress, approved March 3, 1863, and May 11, 1866, as to the action on the part of the added, or new plaintiffs. Issue was joined on the first three pleas, and a demurrer to the last. But upon an agreement of all the parties, that objections to the fourth plea might be urged upon the trial, as if the same were considered upon demurrer, the plaintiffs joined issue upon said plea.
In the progress of the trial, various exceptions were taken to the admission of the evidence offered in the cause; but we feel it necessary to notice only one.
After the plaintiff had closed his testimony in chief, and during the examination of the defendant’s witnesses, Jo. C. Smith, who, it seems, under the direction of the Mayor of the City, acted as agent of the Corporation, *98 in supplying tbe city with wood, stated, “that, by request of the Mayor, in the Fall of 1862, he went to Capt. St. Clair Morton, who had command of Fort Negley, to learn from him what wood he had condemned to be cut down, and given for use as fuel within the City. Witness went to Capt. Morton, as directed, and communicated his business. Morton went with witness and pointed out all the wood to be cleared, and said it must be cut down and taken away. Morton pointed out other woods besides Merritt’s, which he said must come down. Witness spoke in deprecating terms in cutting some one piece of woods, especially, telling Capt. Morton that it belonged to a Union man. Capt. Morton replied, that he was very sorry that any of these groves should be destroyed, but that all he was pointing out must come down, and be taken away, to clear the range of the guns of the Fort, and to prevent the woods being used as a covert by the enemy. He said it was a military necessity.”
To this evidence, which is set out literally, the plaintiff, by his Attorney, excepted, especially to the declaration, that, “it was a military necessity” to remove the timber; but the Court overruled the exception, and allowed the evidence to go to the jury.
It is proper to remark that there are declarations of General Negley, who, as it seems, was in command of the military post of Nashville at the time, of the same character, which were excepted to, and the exceptions overruled. Capt. Morton, was the Chief Engineer of the Army of the Cumberland; and it is argued that the military ranks, and position occupied *99 by these officers, gives them some sort of exemption from the common rules of evidence; -but we are utterly unable to distinguish between their conversations and the conversations of an ordinary citizen.
It is clear, upon the plainest principles of evidence, that the declarations of Capt. Morton, where no reason is shown why he was made a witness, were mere hear-says, and excluded as such, by the established rules of evidence: 1 Greenleaf’s Evidence, 99; 1 Swan, 279.
The admission of this evidence, in the attitude of this record before us, goes to the gist of the. action, and is, of itself, enough to require a reversal of the case.
The charge of the Court is also exceptionable. His Honor, the Circuit Judge, in 'substance, instructed the jury — That, if they believed from the evidence, that a military officer, having command of the post, or place where the force is found, for military purposes, either by verbal or written order, condemned the forest; and afterwards the timber, thus condemned, was, by permission of the military authorities, taken by the corporation or its agents, they would not be responsible.
This part of the charge, has a direct application to the count in the declaration for trespass, and assumes, that after the order condemning the forest, (the permission granted the defendant by the military commander to remove the trees,) was a license, or protection to them against the alleged trespass.
To enable the defendant to avail himself of this defense at common law, the license or excuse must have been pleaded specially: 1 Chitty, margin, 505; and *100 by our statute, Code, sections 2913, 2914 and 2915, he was bound to give notice of his special defense, otherwise the evidence relied on was inadmissable, and the charge inapplicable to the pleadings; for which the case must go back, without discussing other questions. This, we think, was also improper, to say nothing about the questionable propriety of the charge, in relation to the right of a military commander to impress, or take private property without first showing, by proof, that there was some immediate impending danger, or immediate necessity urgent for the public service, by which he was impelled to do so; or of the authority of such military commander to dispose of such property when taken or impressed, for the benefit of third persons, not connected with the army: Mitchell vs. Harmay, 13 Howard, 128. But as to these questions we express no opinion.
Ordinarily, while the Courts may see and appreciate the patriotic motives of military commanders in the exercise of powers derived from the urgent necessity of the case, they cannot excuse their trespass. Such questions belong to, the political power of the Grovernment; and the Acts of Congress relied on as a bar to this action, by lapse of time, is a striking example of such interposition by the political power of the government, to protect its officers and soldiers against such trespasses and acts, not authorized by law.
But, we do not deem it necessary to discuss these Acts of Congress, or to make any decision upon them, notwithstanding they are held by the Circuit Court to be applicable to this case, as constituting a bar to the *101 action under tbe plea of the statute of limitations. It is proper, perhaps, to remark, that the Act of May, 1866, enlarges and extends the Act of March, 1863; but we do not think the former Act is extended far enough to embrace this case. It is not pretended that the order under which the defendant pretends to justify, was addressed as a military order to the City corporation, to remove the timber in question, without which there can be no protection. At most, the City authorities claim to have acted by permission, and not under military restraint; and if they acted voluntarily, and for their own benefit, they cannot claim the benefits of the Act of Congress.
Besides, we do not think these Acts of Congress were intended by the National Legislature, to embrace the class of cases now before the Court.
Reverse the judgment, and a new trial awarded.